907 P.2d 110

**Sheila McCOY, Plaintiff–Appellant,**

v.

**STATE of Idaho, DEPARTMENT OF
HEALTH AND WELFARE,
Defendant–Respondent.**

No. 21563.

Supreme Court of Idaho,
Pocatello, September 1995 Term.

Dec. 5, 1995.

Idaho Legal Aid Services, Inc., Pocatello, for appellant. Boyd J. Peterson argued.

Alan G. Lance, Idaho Attorney General; Brent E. Asay, Deputy Attorney General, Pocatello, for respondent. Brent E. Asay argued.

TROUT, Justice.

This appeal arises from a denial of Medicaid coverage by the Idaho Department of Health and Welfare (Department) for a gastric bypass surgery deemed to be medically necessary by the appellant's physicians. We vacate the order of the district court denying coverage and remand for further proceedings consistent with this opinion.

# I.

## BACKGROUND

Sheila McCoy is disabled and receives aid under the Supplemental Security Income (SSI) program. As an SSI recipient, McCoy is also entitled to medical coverage under Medicaid. McCoy's primary medical problem, from which she has suffered since the age of 12, is morbid obesity. This has resulted in a number of other health problems including congestive heart failure, hypertension, sleep apnea, and severe joint problems. McCoy has attempted a number of eating programs to reduce her weight all of which have been unsuccessful. McCoy's doctor ultimately referred her to a physician in Salt Lake City for evaluation as a possible candidate for gastric bypass surgery. The consulting physician concluded that the surgery was appropriate in McCoy's case and, in his opinion as well as that of McCoy's primary physician, would correct most of her other health problems as well.

The Department conducted a hearing at which both of McCoy's physicians testified that the surgery was medically necessary to treat McCoy's health problems. Notwithstanding this finding of medical necessity, which was uncontested by the Department, reimbursement for the surgery was denied based upon a state regulation excluding coverage for all medical procedures for the treatment of obesity. The hearing officer refused to invalidate this regulation as violative of federal law and McCoy appealed the Department's decision to the district court. The district court affirmed the Department's order excluding coverage finding it appropriate for a state to prioritize the medical needs of its citizens and restrict coverage of specific conditions based upon the state's financial position.

# II.

## STANDARD OF REVIEW

On appeal, we will review an agency's decision independent of the district court's determination. *Boise Group Homes, Inc. v. Idaho Dep't of Health & Welfare*, 123 Idaho

908, 909, 854 P.2d 251, 252 (1993) (citing *Dovel v. Dobson,* 122 Idaho 59, 831 P.2d 527 (1992). Under the Idaho Administrative Procedure Act, the agency's decision must be affirmed unless the agency's findings and conclusions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) not supported by substantial evidence on the record as a whole; or

(e) arbitrary, capricious, or an abuse of discretion.

*Willig v. Idaho Dep't of Health & Welfare,* 127 Idaho 259, 261, 899 P.2d 969, 971 (1995) (citing I.C. § 67–5279(3)).

### III.

### MEDICAID COVERAGE OF SURGERY

 Title XIX of the Social Security Act establishes Medicaid and authorizes grants to states in order to finance medical care for indigent Americans. 42 U.S.C. §§ 1396–1396v. Each state's participation in Medicaid is optional, but once a state voluntarily elects to participate in the program, it must comply with the requirements imposed by the Act and applicable regulations. *Alexander v. Choate,* 469 U.S. 287, 289 n. 1, 105 S.Ct. 712, 714 n. 1, 83 L.Ed.2d 661 (1985). Participating states are given considerable flexibility in determining the scope of coverage they must provide although care must be given to needy individuals in at least seven general categories of medical services including inpatient hospital services, outpatient hospital services, and physician's services. *Hern v. Beye,* 57 F.3d 906, 910 (10th Cir. 1995) (citing 42 U.S.C. § 1396d(a)(1)–(5), (17), (21)). There is no requirement, however, that a state provide funding for all medical treatment falling within one of these general service categories and, consistent with the objectives of Title XIX, a state may limit funding of services to only those that are

deemed medically necessary. *Beal v. Doe,* 432 U.S. 438, 444, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1977). *See also* 42 C.F.R. § 440.230(d) (a state agency "may place . . . limits on a service based on such criteria as medical necessity").

Payment for McCoy's surgery was denied by the Department in this case pursuant to a state regulation which excludes from coverage the costs of physician and hospital services for "[a]ll medical procedures for the treatment of obesity." IDAPA 16.03.09065.02.1. McCoy asserts that the Department must provide coverage for her surgery since both her primary physician and attending specialist deemed it medically necessary to treat her congestive heart failure, hypertension, sleep apnea, and joint problems. The medical necessity of the gastric bypass surgery was not contested by the Department and, in fact, the hearing officer noted in his findings that McCoy's congestive heart problem, sleep apnea, joint problems, and, more than likely, her hypertension, would be fully resolved following the elimination of McCoy's obesity and conceded the medical necessity of the surgery.

Neither Title XIX nor the federal regulations explicitly provide that coverage of every procedure that a physician may deem medically necessary is required.[1] The United States Supreme Court has similarly failed to provide state agencies and courts with clear direction on this issue noting only that "serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage." *Beal,* 432 U.S. at 444, 97 S.Ct. at 2371. As a result, the circuits have divided with some courts finding that there is no statutory requirement that states provide medically necessary service. *See Preterm, Inc. v. Dukakis,* 591 F.2d 121, 125 (1st Cir.1979) (dictum in *Beal* does not signal a flat rule that all services within the mandatory categories deemed medically necessary by a patient's physician must be provided by the state plan); *Curtis v. Taylor,* 625 F.2d 645, 652

---

**1.** Although "medical necessity" is not defined by either federal or state statute or regulation, we have previously noted that a surgery is medically necessary "if there is a stabilization or improve-

ment in the functioning of a body part, or if the procedure relieves pain." *Viveros v. State Dep't of Health & Welfare,* 126 Idaho 714, 717, 889 P.2d 1104, 1107 (1995).

(5th Cir.1980) (a state may limit services based on a judgment of degree of medical necessity so long as it does not discriminate on the basis of medical condition). Other circuits have held, to the contrary, that participating states must provide all medically necessary services that fall under one of the mandatory coverage categories. *See Dexter v. Kirschner*, 972 F.2d 1113, 1117 (9th Cir. 1992) (participating states "must provide assistance to pay for *medically necessary* inpatient hospital and physician's services for eligible persons") (emphasis in original); *Weaver v. Reagen*, 886 F.2d 194, 198 (8th Cir.1989) (a state must provide "treatment that is deemed 'medically necessary' in order to comport with the objectives of the Act").

The United States Supreme Court has given the states some guidance, however, and stated that they have broad discretion to adopt standards for determining the extent of medical assistance they will provide, "requiring only that such standards be 'reasonable' and 'consistent with the objectives' of [Title XIX]." *Beal*, 432 U.S. at 444, 97 S.Ct. at 2371 (citing 42 U.S.C. § 1396a(a)(17)). Many courts have found that the touchstone for evaluating whether a state plan is reasonable is whether medically necessary procedures are covered. *See Hern*, 57 F.3d at 911 n. 3. A state's refusal to provide medically necessary care has, on more than one occasion, been found to be arbitrary. *Montoya v. Johnston*, 654 F.Supp. 511, 513–14 (W.D.Tex. 1987) (citing *Meyers v. Reagan*, 776 F.2d 241 (8th Cir.1985); *Mitchell v. Johnston*, 701 F.2d 337 (5th Cir.1983)). Other courts have noted the heavy burden that this requirement would impose on a state's budget since the term "medical necessity" is theoretically limited only by the number of practicing physicians. *See, e.g., Preterm*, 591 F.2d at 125. The court in *Preterm* pointed specifically to the opening section of the Medicaid statute in support for its contention that the Social Security Act does not mandate the provision of all necessary medical services as a substantive requirement on the states:

> For the purpose of enabling each State, *as far as practicable* under the conditions of such State, to furnish (1) medical assistance on behalf of ... disabled *individuals, whose income and resources are insuf-* *ficient to meet the costs of necessary medical services* ... there is hereby authorized to be appropriated....

*Id.* at 124 (emphasis in original) (quoting 42 U.S.C. § 1396). The court "hesitate[d] to draw the words 'necessary medical services' from their context—an appropriations section—and in effect transport them into a contents section requirement." *Id.* at 125.

As the court in *Preterm* noted, there should actually be two levels of judgment as to medical necessity in the scheme set up under Title XIX. *Id.* The first is the "macro-decision" by the state that only certain kinds of medical assistance are sufficiently necessary to fall under the coverage of its plan and the second is the "micro-decision" of the physician that the condition of a particular patient warrants treatment which the state plan makes available. *Id.* The Idaho regulation at issue here, *i.e.* the exclusion of all procedures for the treatment of obesity, reflects Idaho's "macro-decision" that medical assistance for all services that may be used to treat obesity is never sufficiently necessary to warrant coverage. The question this Court must ask then, is whether this exclusion is both "reasonable" and "consistent with the objectives" of Title XIX.

Clearly, when a state singles out a particular medical condition and restricts treatment for that condition to life and death situations, it is both "unreasonable" and wholly inconsistent with Title XIX's objective of providing *medical assistance to eligible individuals in need of medical assistance. See, e.g., Id.* at 126. In addition, although "a state may reasonably exclude some procedures on the basis that they are never, or generally never, of sufficient medical necessity," *Hodgson v. Board of County Comm'rs, County of Hennepin*, 614 F.2d 601, 608 (8th Cir.1980), our concern is that an exclusion of all treatments that may be deemed a treatment for obesity appears to us overbroad. This exclusion could potentially result in excluding from coverage a particular treatment that, in certain circumstances, is the only available treatment for a condition that is not excluded under the regulations. As one court has noted, a state plan that absolutely

excludes the only available treatment for a particular condition not excluded by a state regulation must be considered an arbitrary denial of benefits. *Pinneke v. Preisser*, 623 F.2d 546, 549 (8th Cir.1980).

In *Morgan v. Department of Health & Welfare*, 120 Idaho 6, 813 P.2d 345 (1991), a Medicaid recipient had been diagnosed with pseudotumor cerebri, a medical condition which produces the symptoms of a brain tumor. *Id.* at 7, 813 P.2d at 346. The patient's physician found that a weight loss program was medically necessary to relieve the patient's intracranial pressure and reduce the risk of eventual blindness. *Id.* at 8, 813 P.2d at 347. The Department continued to pay for other treatment of the patient and had acknowledged that the weight loss program was medically necessary. *Id.* It refused, however, to pay for the weight loss program on the basis of the regulation's exclusion for medical procedures for the treatment of obesity, the same provision the Department based its decision to refuse payment for McCoy's gastric bypass surgery. *Id.* The Court in *Morgan* found, however, that:

> [t]he clear evidence in the record establishes that the treatment prescribed is not a procedure to treat obesity as contemplated in the regulations. Rather, the weight loss program, like the prior medications and spinal taps which the Department has paid for, and the spinal shunt which the Department acknowledges it will pay if performed, is for the treatment of Morgan's condition of pseudotumor cerebri. The fact that the weight loss program may secondarily treat obesity is not dispositive. The primary purpose for the treatment is to treat the pseudotumor cerebri and the prescribed program should be paid by the Department.

*Id.* at 11, 813 P.2d at 350. The facts of *Morgan* are remarkably similar to those before us now although, importantly, the patient in *Morgan*, unlike McCoy, was never

diagnosed as obese by her physician and the exclusion did not apply. If, however, the patient in *Morgan* had been found by her physician to be obese, the regulation's blanket exclusion of all medical treatments for the treatment of obesity would stand as an irrebuttable bar to coverage.

As was the case in *Morgan*, extensive efforts have been made to treat McCoy's congestive heart failure, hypertension, sleep apnea, and joint problems through means approved under the regulations. Realistically, the overall cost to the public for McCoy's continued ineffective treatment may easily exceed the cost of this single procedure which both of McCoy's doctors contend is medically necessary.[2] This is not cosmetic surgery but surgery designed to resolve debilitating and potentially life-threatening conditions. McCoy is entitled to some form of treatment for these conditions under the law and the public will pay for that treatment. The question is whether she will continue to receive the ineffective, and certainly not curative, treatment that the regulations allow or the medically necessary treatment that may successfully and finally resolve her chronic health problems.

■ It follows, then, that IDAPA 16.03.09065.02.1. must be seen as an unreasonable exclusion that arbitrarily denies funding for all procedures that may be considered a treatment for obesity even though a particular procedure may be the only treatment, or even the best treatment, available for a condition not excluded under Idaho's plan. We hold that this overbreadth is fatal and that the regulation must be struck as inconsistent with the objectives of Title XIX. We note in passing, however, that this opinion does not address whether the exclusions of certain procedures noted in the regulations, *e.g.* gastric stapling or intestinal bypass surgery, are reasonable and may properly be used to exclude McCoy's gastric bypass sur-

---

**2.** The potential cost differential seen here between the allowed treatment and a more effective though excluded treatment is highlighted most clearly in a case like *Morgan* where, if the patient had actually been diagnosed as obese, the regulations would not have paid for the simple and relatively inexpensive weight loss program but, perversely, would have allowed brain surgery, apparently the only treatment alternative for the patient's pseudotumor cerebri. *Id.* at 10–11, 813 P.2d at 349–350.

gery as this question has not been presented to us.

## IV.

## AUTHORITY OF HEARING OFFICER

McCoy argues that the hearing officer had the jurisdiction and authority to invalidate the Department's regulation. We have determined that the Department's regulation at issue in this case, IDAPA § 16.03.09065.02.1., is unreasonable and an arbitrary exclusion of coverage inconsistent with the objectives of Title XIX, and is, thus, invalid. We find it therefore unnecessary to reach the issue of whether the hearing officer had either the jurisdiction or the authority to do the same.

## V.

## ATTORNEY FEES

■ McCoy also argues that she is entitled to attorney fees incurred on her appeal. A successful litigant is generally not entitled to recover attorney fees unless such recovery is provided by statute. *Kidwell & Heiser v. Fenley*, 96 Idaho 534, 531 P.2d 1179 (1975). McCoy asserts entitlement to attorney fees under 42 U.S.C. § 1988 and I.C. § 12–117, –121.

■ A cause of action under 42 U.S.C. § 1983 is available to any person wrongfully deprived by the state of a right, privilege, or immunity secured by federal law. *Maine v. Thiboutot*, 448 U.S. 1, 4–5, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). 42 U.S.C. § 1988 provides that attorney fees are available to a party that prevails in a suit properly brought under § 1983. *Id.* This would include actions based solely on Social Security Act violations. *Maher v. Gagne*, 448 U.S. 122, 128, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980). In this case, however, McCoy failed to claim a violation of § 1983 before the district court and, for this reason, we may not consider imposing attorney fees under § 1988 since the issue was not raised at trial. *Schiewe v. Farwell*, 125 Idaho 46, 49, 867 P.2d 920, 923 (1993).

■ McCoy also claims entitlement to attorney fees under I.C. § 12–121. This sec-tion provides that "in any civil action," the judge may award the prevailing party reasonable attorney fees. McCoy brought this matter before the district court on appeal from the hearing officer's decision. That proceeding does not constitute a "civil action" as defined by I.R.C.P. 3(a) and attorney fees are, therefore, not available under I.C. § 12–121. *Lowery v. Board of County Comm'rs*, 117 Idaho 1079, 1082, 793 P.2d 1251, 1254 (1990).

■ Finally, McCoy asserts an award of attorney fees under I.C. § 12–117. This section provides that in a "civil judicial proceeding" between a person and a state agency, the court shall award the person attorney fees if the state agency acted "without a reasonable basis in fact or law." I.C. § 12–117. This Court has held that the policy behind this statute is to serve as a deterrent to groundless or arbitrary agency action and to provide a remedy for those who must bear unjustified expense attempting to correct agency mistakes that should never have been made. *Idaho Dep't of Law Enforcement v. Kluss*, 125 Idaho 682, 685, 873 P.2d 1336, 1339 (1994) (quoting *Bogner v. State Dep't of Revenue & Taxation*, 107 Idaho 854, 859, 693 P.2d 1056, 1061 (1984)).

In this case the Department defended its decision to deny McCoy's surgery based solely upon the exclusion from coverage for all medical procedures for the treatment of obesity under IDAPA § 16.03.09065.02.1. Although the Department's justification for denying coverage was in error for the reasons stated in this opinion, its defense of this position was certainly not so unreasonable as to justify the imposition of attorney fees under I.C. § 12–117.

## VI.

## CONCLUSION

The decision of the hearing officer is hereby vacated. Because the regulation on which the hearing officer based his decision to deny coverage of McCoy's gastric bypass surgery is invalid we remand this case back to the Department for further proceedings consis-

tent with this opinion. No costs or attorney fees awarded on appeal.

McDEVITT, C.J., and SILAK and SCHROEDER, JJ., and MOSS, J. Pro Tem, concur.