7 P.3d 1095

Donald A. DUPONT, Petitioner–Appellant–Cross Respondent—Respondent on Appeal–Cross Respondent.

v.

IDAHO STATE BOARD OF LAND COMMISSIONERS, and the Department Of Lands, Stanley Hamilton, Director, Respondents–Respondents–Cross Respondents—Respondents on Appeal–Cross Appellants,

and

City of Coeur D'alene, Intervenor Cross Appellant–Appellant on Appeal–Cross Respondent.

No. 25041.

Supreme Court of Idaho, Coeur d'Alene, April 2000 Term.

July 28, 2000.

Rehearing Denied Sept. 12, 2000.

**620**

Jeffrey A. Jones and Nancy Stricklin, Coeur d'Alene, for appellant City of Coeur d'Alene. Nancy Stricklin argued.

John F. Magnuson, Coeur d'Alene, for respondent Dupont.

Hon. Alan G. Lance, Attorney General, Boise, for respondent Idaho State Board of Land Commissioners and Department of Lands. Stephanie A. Balzarini, Deputy Attorney General, argued.

TROUT, Chief Justice.

This is an appeal from an order of the district judge vacating an order of the State Board of Land Commissioners (Board) revoking a dock permit issued to Donald Dupont (Dupont) by the Idaho Department of Lands (Department). The City of Coeur d'Alene (City) appealed from the order of the district court and the Board has cross-appealed. For the reasons set forth below, we now affirm the decision of the Board revoking Dupont's dock permit.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Dupont owns 158 feet of littoral property on the shores of Lake Coeur d'Alene. In March of 1992, Dupont filed an application under I.C. § 58–1305 seeking permission from the Department to construct a private dock in the waters abutting his property. Idaho Code § 58–1305(b) requires an applicant to either get consent from, or give formal notice to, adjacent owners "[i]f the plans of the proposed encroachment indicate such infringement will or may occur. . . ." Dupont gave notice of his application to the owners of the adjoining properties. Additionally, on April 6, 1992, the Department sent letters to the property owners giving them twenty-one days from the date of the letter to file an objection with the Board. Dennis Davis, the owner of a one-quarter interest in an adjoining littoral lot, did file an objection with the Department but not until April 30, 1992, after the deadline imposed by the Department.[1] It is undisputed the City was never given formal notice from either Dupont or the Department. However, the record also reflects the Department communicated with the City several times in March and April regarding the application of city ordinances to the proposed dock.

Under I.C. § 58–1305(c), the Board is required to hold a hearing if an objection is filed by an adjacent landowner, or if the Board deems it advisable because of the existence of unusual circumstances. Because there was no timely objection filed, and notwithstanding the notice of the City ordinance establishing a public swimming zone in the area of the proposed encroachment, the Department administratively determined Dupont's application was neither unusual nor distinguishable from the approximately 2,000 applications the Department receives annually. Accordingly, Dupont's permit was administratively issued pursuant to I.C. § 58–1305 on May 4, 1992.

On May 12, 1992, Davis provided the Department with a "Notice of Appeal" of Dupont's permit. On May 27, 1992, the City also notified the Department of its objection to the permit, and requested the Board reconsider the decision to grant it. In response to the notice of appeal and the public concern generated by the issuance of the permit, the Department scheduled an informal reconsideration hearing. At the informal hearing, after hearing statements from all the parties, the Department concluded the permit was validly issued. On July 7, 1992, the Board held a meeting concerning the Davis appeal. At the conclusion of that meeting, the Board scheduled a contested case hearing pursuant to former I.C. § 67–5214(c) to determine whether to reaffirm or revoke Dupont's permit. On August 26, 1992, the hearing officer issued an order allowing the City to intervene in the contested case administrative proceedings.

Pursuant to the Board's order, a hearing officer was appointed and a contested case

---

1. I.C. § 58–1305(b) actually provides that an owner given notice shall only have ten days to file an objection. However, the Department's letter gave Davis twenty-one days to object. Under either deadline, Davis's objection was untimely.

hearing was held on December 7 and 8, 1992. Following the hearing, the hearing officer made findings of fact and conclusions of law and recommended the permit be revoked. It is undisputed the hearing officer conducted a *de novo* hearing and made a *de novo* decision regarding the appropriateness of issuing the permit. The Board adopted the findings of the hearing officer, and adopted all but two of the conclusions of law. The Board did not adopt the hearing officer's conclusion that the hearing was a reconsideration of the decision to issue a permit, rather than a hearing on the revocation of the permit, and the Board did not adopt the conclusion of law that the City was an adjacent landowner and therefore entitled to notice of the proposed encroachment under the Lake Protection Act. On August 3, 1993, the Board issued a decision revoking Dupont's permit. Dupont then appealed to the district court. The City filed a cross-appeal claiming the Board incorrectly determined the hearing officer had erred in classifying the contested hearing as a reconsideration of the decision to issue the permit, and the Board incorrectly held the hearing officer had erred in concluding Dupont had failed to provide adequate notice to the City.

After briefing and argument, the district judge issued his opinion on August 20, 1998. In his opinion, the district judge concluded the Board's order revoking Dupont's permit was in error and vacated the order, remanding the case back to the Board for further proceedings. The court determined there was no procedure by which the Board could order a *de novo* reconsideration of the decision to grant Dupont's permit. Rather, the contested case must have been a revocation hearing. At a revocation hearing, the petitioners would have had the burden of proof to show Dupont's permit should be revoked and the only issue properly before the hearing officer would have been whether the requirements of the law were met at the time the permit was granted. The district judge held the hearing officer had applied an incorrect standard of review to the case and the Board's adoption of the officer's findings and conclusions was erroneous. The City then appealed from this decision and the Board cross-appealed.

## II.

### STANDARD OF REVIEW

■ On appeal, this Court will review an agency's decision independent of the district court's determination. *McCoy v. State, Dept. of Health & Welfare,* 127 Idaho 792, 793, 907 P.2d 110, 111 (1995). Under the Idaho Administrative Procedure Act, the agency's decision must be affirmed unless the agency's findings and conclusions are:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) not supported by substantial and competent evidence on the record as a whole; or

(e) arbitrary, capricious, or an abuse of discretion.

*McCoy,* 127 Idaho at 794, 907 P.2d at 112 (citing I.C. § 67–5279(3)).

## III.

### DISCUSSION

On appeal, the parties present five issues to this Court. First, the City argues the Board incorrectly determined the hearing was a revocation proceeding rather than a reconsideration of the original decision to issue Dupont's dock permit. Second, Dupont argues the Board incorrectly applied a *de novo* standard of review to the revocation hearing. Third, Dupont argues even if the Board applied the correct standard of review, I.C. § 58–1305(a) is unconstitutionally vague. Fourth, Dupont argues the Board's decision to revoke the permit is not supported by substantial and competent evidence. Fifth, both the City and the Board argue the public trust doctrine provides an independent basis for the Board's decision. We will address each argument in turn.

**A. The City lacks standing to appeal the issue regarding the characterization of the contested case hearing.**

■ On appeal, the City argues the Board erred in rejecting the hearing officer's con-

clusion that the contested case hearing was a reconsideration of the original administrative decision to issue the permit, not a hearing on the revocation of Dupont's permit. Despite the Board's rejection of the hearing officer's conclusion regarding the nature of the proceedings, the Board nevertheless revoked Dupont's permit; the outcome the City desired. Thus, because the City has suffered no injury as a result of the Board's action in this regard, the City lacks standing to now raise this issue on appeal. Therefore, we decline to address the merits of this issue.

**B.  The Board applied the correct standard of review to the revocation proceeding.**

■ Dupont argues the Board applied an incorrect standard of review to the revocation hearing. According to Dupont, in reviewing the Department's initial administrative determination to issue the permit, the Board was required to apply "well-accepted principles of appellate review." That is, the Board could only review the record and determine whether the Department's findings of facts supported its conclusions of law. The Board could not reweigh the evidence and substitute its opinion for that of the Department. Because there is no dispute the Board applied a *de novo* standard to the hearing, Dupont argues the Board's findings and conclusions were made upon unlawful procedure and must be overturned.

In contrast to Dupont, both the City and the Board argue a *de novo* standard is appropriate for revocation hearings. Under the administrative rules governing lake encroachments in effect at the time the Board conducted the hearing, revocations or withdrawals of permits were required to comply with the procedures set forth in I.C. § 67–5214(c) (now amended and renumbered as I.C. § 67–5254). IDAPA 20.11.4(u) (1990). Idaho Code § 67–5214(c) provided, in relevant part:

> [n]o revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee was

given an opportunity to show compliance with all lawful requirements for the retention of the license.

In this case, it is undisputed Dupont was sent a notice of the Board's decision to refer the matter to a hearing officer, as well as the basis for the Board's decision to institute a revocation hearing. While neither the IDAPA rules, nor I.C. § 67–5214(c) expressly required a contested case hearing for the revocation of the permit, the Notice of Hearing from the Board stated the hearing was intended to comply with the requirements of a contested case hearing under I.C. § 67–5209 (now amended and renumbered as I.C. § 67–5242). Additionally, I.C. § 67–5240 defines any proceeding that may result in an order as a contested case, unless otherwise provided. Consequently, because the rules and I.C. § 67–5214(c) did not expressly provide otherwise, a contested case hearing was required prior to the issuance of an order revoking Dupont's permit.

Dupont does not dispute the fact that a contested hearing was required. Instead, Dupont argues the only issue at the hearing should have been whether the Department's decision to issue the permit was supported by law. Dupont seems to argue a contested hearing could be held to create an evidentiary record, but when reviewing the record, the Board had to apply an appellate standard of review to the Department's original decision and simply decide whether the evidence in the record, although conflicting, supported the Department's decision. However, Dupont fails to provide any statutory authority for that type of procedure. Rather, by its very nature, a contested case hearing on the revocation of Dupont's permit would involve the presentation of evidence by all parties and a recommendation from the presiding officer as to whether or not the permit should be revoked, based upon that evidence. *See* I.C. § 67–5242, –5243. The Board then reviews the recommendation and, based on the evidence from the hearing, makes an independent determination as to whether the permit was issued in violation of the applicable laws. *See* I.C. § 67–5244. Thus, even if the hearing officer's recommendations were based on an incorrect standard of review, as

long as the Board applied the correct standard in its decision, the Board's decision is still valid. Here, it is undisputed the Board knew it was conducting a revocation proceeding and Dupont has not argued the Board did not require the objectors to carry the burden of proof before the Board. Therefore, we hold the Board followed proper procedures in its decision to revoke Dupont's permit.

## C. Idaho Code § 58–1305(a) is not unconstitutionally vague.

■ Dupont argues even if the Board followed the proper procedure in revoking his permit, the Board's decision must be overturned because I.C. § 58–1305(a) is unconstitutionally vague. Idaho Code § 58–1305(a) provides:

> Applications for construction, enlargement or replacement of navigational encroachments not extending beyond the line of navigability nor intended primarily for commercial use shall be processed by the board with a minimum of procedural requirements and shall not be denied nor appearance required except in the most unusual of circumstances or if the proposed encroachment infringes upon or it appears it may infringe upon the riparian or littoral rights of an adjacent property owner.

Dupont argues the phrase "the most unusual of circumstances" is not subject to any kind of reasonable interpretation that would provide meaningful guidance to applicants. In support of this argument, Dupont relies on language from *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 791 P.2d 1285 (1990). In *Olsen*, this Court held a statute is void for vagueness where its language is such "that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Id.* at 716, 791 P.2d at 1295. Additionally, the Court held that implicit in the constitutional safeguard of due process is "the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce." *Id.* at 715, 791 P.2d at 1294 (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–03, 86 S.Ct. 518, 520–21, 15 L.Ed.2d 447, 449–50 (1966)). Dupont argues the phrase "the most unusual

of circumstances" fails these tests because it is necessarily a subjective standard and changes depending on who is making the determination.

In contrast, the City argues I.C. § 58–1305(a) is not unconstitutionally vague because it can be given a reasonable interpretation. The City notes this Court has previously held a statute will not be held void for vagueness when "such terms can be interpreted as taking their ordinary, contemporary or common meaning." *Olsen*, 117 Idaho at 717, 791 P.2d at 1296. In *Olsen*, this Court also noted that when "evaluating a constitutional challenge to a statute on the basis of void for vagueness, the Court must consider both the essential fairness of the law and the impracticability of drafting legislation with greater specificity." *Id.* at 715, 791 P.2d at 1294. In this case, the phrase "the most unusual of circumstances" can be reasonably interpreted. Obviously, "unusual" means out of the ordinary, different, etc. Therefore, under the express language of the statute, the Board, under ordinary circumstances, is directed to grant a permit for a private, noncommercial encroachment as long as it does not infringe on the littoral rights of adjacent owners. Additionally, the statute gives the Board the right to deny the permit if, in its discretion, the Board determines the circumstances surrounding a particular encroachment are so out of the ordinary as to make it inadvisable to issue the permit. Such a determination is necessarily fact specific and may vary from case to case. However it may be applied in any specific case, the phrase "the most unusual of circumstances" is capable of a reasonable and rational interpretation based on the ordinary meaning of the words. Therefore, we find the statute is not unconstitutionally vague.

## D. The Board's decision to revoke Dupont's permit is based on substantial and competent evidence in the record.

In her finding of facts, conclusions of law and recommendation to the Board, the hearing officer based her recommendation to deny Dupont's permit on her conclusions the City had been given inadequate notice, "the most unusual of circumstances existed," and

the permit would violate the Public Trust Doctrine. In its order revoking Dupont's permit, the Board adopted the last two conclusions but rejected the conclusion the City had been given inadequate notice. Both Dupont and the City have appealed from these findings and conclusions.

1. *No substantial right of the City has been prejudiced by the Board's determination that the City was not entitled to notice.*

■ The City argues the Board erred in rejecting the hearing officer's conclusion the City had been given inadequate notice under I.C. § 58–1305(b). The City argues it is an adjacent landowner and was therefore entitled to notice of the proposed encroachment under the Lake Protection Act. In contrast, both the Board and Dupont contend the City's argument is moot because, regardless of whether the City was entitled to proper notice, it is undisputed the City received actual notice of the proposed encroachment in a timely fashion and was allowed to intervene in the action by the hearing officer. In its reply brief, the City essentially concedes the issue is moot, but asks this Court to consider the issue in order to provide guidance in future cases.

Based on the standard of review to be applied to administrative appeals, however, it is unnecessary for this Court to even reach the question of mootness. Under I.C. § 67–5279(4), a court can overturn an incorrect decision of an administrative agency only if substantial rights of the appellant have been prejudiced. In this case, the City's rights have not been prejudiced. The City was allowed to intervene in the action, present its evidence and witnesses, and be heard at all stages of the revocation hearing. Additionally, the Board reached the result desired by the City when it ordered the revocation of Dupont's permit. Therefore, no substantial right of the City has been prejudiced by the Board's rejection of the hearing officer's conclusion the City had been provided with inadequate notice. Consequently, we decline to address the question of whether the City was entitled to notice under the statute.

2. *Unusual Circumstances.*

With regard to the Board's decision to revoke the permit based on the existence of "the most unusual of circumstances," Dupont first argues the decision is not supported by substantial and competent evidence because the Board applied an incorrect standard of review. According to Dupont, if the "appellate" standard of review Dupont advocates is applied to this case, then the Department's initial administrative decision must be affirmed because there is evidence in the record to support that decision. Consequently, the Board's decision to revoke the permit cannot be based on substantial and competent evidence. However, as discussed earlier, the "appellate" standard of review advocated by Dupont is not the appropriate standard for a revocation hearing conducted under the IDAPA rules in place at the time the hearing occurred. The question is not whether evidence supports the Department's initial decision, but whether the Board's decision to revoke the permit is based on substantial and competent evidence.

Dupont argues the Board's decision is not based on substantial and competent evidence because the Board impermissibly took into consideration the intended use of the proposed encroachment, instead of focusing only on the placement and existence of the encroachment. Dupont argues the Board erred because it considered the City's boating ordinances and the Idaho Safe Boater Act in making its determination "the most unusual of circumstances" existed. The City boating ordinances prevent the operation of a motorized vessel within a designated swimming area. Similarly, a provision of the Idaho Safe Boater Act, I.C. § 67–7026, prohibits vessels from entering marked swimming areas, such as the area located offshore from Dupont's property. Dupont contends the Board has the right to regulate the existence of this encroachment, but cannot regulate the use of it. Therefore, since the Board revoked his permit because the applicable state and local laws would prevent the use of the dock by a motorized boat (at least from April to September), the Board is regulating the use of the dock.

While the Board clearly considered the existence of the City ordinances and the Idaho Safe Boater Act when determining the proposed encroachment presented the most unusual of circumstances, it does not follow the Board impermissibly regulated Dupont's use of the encroachment. In fact, it appears Dupont's intended use of his dock had less to do with a finding of unusual circumstances than did the existence of a designated swimming area in the area of the proposed placement of the encroachment. It is the existence of the swimming area which in large part created the unusual circumstances, not Dupont's stated intent to use the encroachment as a boat dock. Certainly, the existence of the designated swimming area in the location of the proposed encroachment is highly relevant to the question of whether the proposed encroachment presents "unusual circumstances."

■ Additionally, the fact the Board does not have the authority to regulate the use of the dock does not prevent the Board from considering the proposed use in its decision. In *Shokal v. Dunn*, 109 Idaho 330, 707 P.2d 441 (1985), this Court addressed the interrelation between the Department of Water Resources and the Department of Health and Welfare in the area of water appropriation permits. We noted "[i]t is not the primary job of Water Resources to protect the health and welfare of Idaho's citizens and visitors – that role is vested in the Department of Health and Welfare...." *Id.* at 340–41, 707 P.2d at 451–52. We then went on to say "although these agencies may have separate functions, Water Resources is precluded from issuing a permit for a water appropriation project which, when completed, would violate the water quality standards of the Department of Health and Welfare. It makes no sense whatsoever for Water Resources to blindly grant permit requests without regard to water quality regulations." *Id.* at 341, 707 P.2d at 452. A similar rationale applies in this case. It makes little sense for the Board to grant a permit for an encroachment when the intended use of the encroachment would violate applicable local and state laws. Thus, we hold the Board did not exceed its statutory authority when it considered the intended use of the proposed encroachment in making its determination to revoke the permit based on the existence of unusual circumstances.

■ Finally, both the City and the Board argue the Board's decision that the existence of unusual circumstances required the revocation of Dupont's permit is supported by substantial and competent evidence. According to the hearing officer's findings of fact, the Lake Protection Act manager, Will Pitman, testified he was unaware of any encroachment permit that had been requested or issued for the placement of a dock within a designated swimming area. He also testified the Department issues some 300 to 350 encroachment permits each year. Additionally, the evidence presented at the revocation hearing demonstrated hundreds of individuals use the area for swimming during the summer and have done so for many years. The City produced evidence showing the area has been a designated swimming area for approximately 40 years, and the City was granted an encroachment permit to place buoys around the area at least 10 years ago. Furthermore, the buoys forming the outer boundary of the swimming area contain signs saying "No Boats." None of this evidence, with the exception of the number of people using the swimming area, was disputed by Dupont. Rather, Dupont argues the beach area in front of the swimming area (at least above the ordinary high water mark) is private property and he has a traditional riparian right to "wharf out." While riparian owners have traditionally had a right to "wharf out," the right is clearly subject to state regulation as can be seen by the Lake Protection Act. Based on the evidence produced at the contested case hearing, there is substantial and competent evidence to support the Board's finding of "unusual circumstances." Thus, we affirm the Board's decision revoking Dupont's permit. Because we affirm the Board's decision based on the existence of unusual circumstances, it is unnecessary to address the arguments relating to the Public Trust doctrine.

## IV.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the State Board of Land Commis-

sioners revoking Dupont's dock permit. We award costs to appellants.

Justices SILAK, SCHROEDER, WALTERS and KIDWELL concur.