FILED

February 10 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0312

DA 14-0312

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 37

LISA BAILEY,

        Petitioner and Appellant,

   v.

MONTANA DEPARTMENT OF PUBLIC
HEALTH AND HUMAN SERVICES,

        Respondent and Appellee.

APPEAL FROM:    District Court of the First Judicial District,
                  In and For the County of Lewis and Clark, Cause No. ADV 2013-541
                  Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Jessica L. Millward, Montana Legal Services Association, Billings,
           Montana

       For Appellee:

           Susan Callaghan, Office of Legal Affairs, Department of Public Health
           and Human Services, Helena, Montana

                          Submitted on Briefs:  October 29, 2014
                                    Decided:  February 10, 2015

Filed:

                                        Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Lisa Bailey, through her physician, requested Medicaid authorization for gastric bypass surgery. The Montana Department of Public Health and Human Services (Department) denied her request. The decision was affirmed through administrative proceedings, and Bailey requested judicial review. The First Judicial District Court, Lewis and Clark County, also affirmed the Department's decision denying authorization for the procedure. Bailey appeals and asks that the Department be required to conduct a determination of medical necessity for the procedure.

¶2 The issue presented for review is whether an administrative rule excluding from coverage under the Montana Medicaid program all invasive procedures undertaken for the purpose of weight reduction, including gastric bypass surgery, is unreasonable and contrary to federal law.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The parties have stipulated to the facts summarized here. Bailey is a 51-year-old mother of three sons, the youngest of whom is eight years old. Bailey is approximately five feet, three inches tall, and weighs 445 pounds. Her body mass index is over 60 and she is considered morbidly obese. Bailey qualifies for the Montana Medicaid program as categorically needy because she is legally blind. Bailey has been legally blind in her right eye since birth. In 2004, she was hit in her left eye with a paintball, which caused her eyesight to degenerate further. In 1990, a car she was in was hit by a train, causing long-term injuries to her ribs, knees, and back. In 2000, both her legs were broken in a fall, and she received pins and screws in both legs. Her ankles sometimes "lock up,"

2

leaving her unable to walk for days. In April 2012, Bailey underwent spinal surgery. Bailey has medical conditions including hypertension; diabetes mellitus type 2; edema/venous insufficiency; advancing osteoarthritis of the shoulders, hips, and knees; arthritis of the spine and a disc bulge pressing on her spinal cord; atypical chest pain; hypoventilation syndrome/asthma; obstructive sleep apnea; hypothyroidism; and significant restless leg syndrome.

¶4 Bailey has attempted to lose weight by participating in the Weight Watchers and Take Off Pounds Sensibly programs. She also participated in a year-long weight loss study through the Missoula Community Medical Center. She had some success using diet pills, which were later taken off the market. In 2011, she lost fifty pounds due to a low-carbohydrate diet and exercise. Bailey's many injuries and medical conditions, however, limit her exercise ability. Her three physicians, Dr. Elena Furrow, Dr. Joseph Knapp, and Dr. Timothy Richards, have each written letters to the Department stating that Bailey is a good candidate for gastric bypass surgery. Dr. Furrow stated that if Bailey underwent gastric bypass or other bariatric surgery, "she would most likely have improvement and even complete resolution" of her chronic medical conditions. Dr. Knapp stated that Bailey's "major medical factor is her weight," and "absent aggressive management of her weight, she will become more complicated from a health care standpoint, and become more problematic for medical management." Dr. Richards stated that gastric bypass surgery "would subsequently help all of her other medical problems." None of the physicians specifically stated that gastric bypass surgery was necessary or the only means by which Bailey's condition could be improved.

¶5 On April 28, 2011, Dr. Richards asked the Department to authorize gastric bypass surgery for Bailey. The request was denied because gastric bypass surgery is a non-covered service under Department administrative rules. Bailey requested an administrative hearing, at which she argued that the Department's blanket exclusion of gastric bypass surgery from Medicaid coverage was unreasonable and contrary to federal law. Hearing Officer James L. Keil determined that the Department's basis for excluding gastric bypass surgery was rational and reasonable, because it was based on fiscal necessity. Keil also determined that although the Department had excluded certain treatments, it had not "singled out obesity as a non-covered condition" or discriminated on the basis of obesity. The Board of Public Assistance adopted the decision of the Hearing Officer, and Bailey requested judicial review in the District Court. The District Court affirmed the Department's decision to deny authorization for gastric bypass surgery, also concluding that the basis for the exclusion was reasonable. The District Court observed that Bailey had presented no evidence showing that all possible treatments for obesity were excluded from the Montana Medicaid program. Bailey appeals.

## STANDARDS OF REVIEW

¶6 We review a district court's decision on judicial review of an agency decision to determine whether the findings of fact are clearly erroneous and whether the conclusions of law are correct. *Blue Cross & Blue Shield of Mont. v. Mont. State Auditor*, 2009 MT 318, ¶ 9, 352 Mont. 423, 218 P.3d 475.

4

**DISCUSSION**

¶7 *Whether an administrative rule excluding all invasive procedures undertaken for the purpose of weight reduction, including gastric bypass surgery, from coverage under the Montana Medicaid program is unreasonable and contrary to federal law.*

¶8 Title XIX of the Social Security Act provides for grants to states for medical assistance programs, with the stated objective of "enabling each State, as far as practicable under the conditions in such State, to furnish . . . medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services . . . ." 42 U.S.C. § 1396-1 (2012). State participation in the program, known as Medicaid, is voluntary. *Wilder v. Va. Hosp. Assn.*, 496 U.S. 498, 502, 110 S. Ct. 2510, 2513 (1990). If a state chooses to participate, however, it must comply with federal requirements. *Wilder*, 496 U.S. at 502, 110 S. Ct. at 2513. A participating state must provide "categorically" needy individuals with financial assistance in obtaining medical treatment within certain service areas.[1] *Beal v. Doe*, 432 U.S. 438, 440, 97 S. Ct. 2366, 2368-69 (1977). Categorically needy persons include those with dependent children and the aged, blind, and disabled. 42 U.S.C. § 1396a(a)(10)(A) (2012); *Beal*, 432 U.S. at 440 n. 1, 97 S. Ct. at 2368 n. 1. The mandatory service areas, within which a participating state must provide financial assistance, include inpatient hospital services, outpatient hospital services, laboratory and x-ray services, nursing facility services, and services

---

[1] Participating states may also choose, but are not required, to extend coverage to "medically" needy persons, who do not fall within the federally-specified categories, but are financially unable to obtain adequate medical care. *Beal*, 432 U.S. at 440 n.1, 97 S. Ct. at 2368 n. 1; *Lankford*, 451 F.3d at 504. The provision of services to medically needy persons is not at issue in this case.

5

furnished by a physician, nurse midwife, or nurse practitioner. *Beal*, 432 U.S. at 440 n. 2, 97 S. Ct. at 2369 n.2; *Lankford v. Sherman*, 451 F.3d 496, 504 (8th Cir. 2006).

¶9 Although these service areas are described as mandatory, a state is not required to provide funding for all medical treatment falling within those categories. *Beal*, 432 U.S. at 441, 97 S. Ct. at 2369. States must establish "reasonable standards . . . for determining . . . the extent of medical assistance under the plan which . . . are consistent with the objectives" of Title XIX. 42 U.S.C. § 1396a(a)(17) (2012); *Beal*, 432 U.S. at 441, 444, 97 S. Ct. at 2369, 2377. States are afforded "broad discretion" in determining the scope of medical assistance to be provided. *Beal*, 432 U.S. at 444, 97 S. Ct. at 2371. While "serious statutory questions might be presented" if a state Medicaid program were to exclude medically necessary treatments, it is well within a state's discretion to exclude "unnecessary—though perhaps desirable—medical services." *Beal*, 432 U.S. at 445, 97 S. Ct. at 2371. A state may not "arbitrarily deny or reduce the amount, duration, or scope of a required service . . . solely because of the diagnosis, type of illness, or condition," but may "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230 (2014).

¶10 Montana is a Medicaid participant, and the Montana Medicaid program is administered by the Department. Section 53-6-101(1), MCA. The Montana Medicaid program serves the "purpose of providing necessary medical services to eligible persons who have need for medical assistance." Section 53-6-101(1), MCA. The Legislature has adopted the following statutory provisions guiding the Department's administration of the program:

6

(2) The department and the legislature shall consider the following funding principles when considering changes in medicaid policy that either increase or reduce services:

(a) protecting those persons who are most vulnerable and most in need, as defined by a combination of economic, social, and medical circumstances;

(b) giving preference to the elimination or restoration of an entire medicaid program or service, rather than sacrifice or augment the quality of care for several programs or services through dilution of funding; and

(c) giving priority to services that employ the science of prevention to reduce disability and illness, services that treat life-threatening conditions, and services that support independent or assisted living, including pain management, to reduce the need for acute inpatient or residential care.

. . .

(12) If available funds are not sufficient to provide medical assistance for all eligible persons, the department may set priorities to limit, reduce, or otherwise curtail the amount, scope, or duration of the medical services made available under the Montana medicaid program after taking into consideration the funding principles set forth in subsection (2).

Section 53-6-101, MCA.

¶11    The Department has promulgated rules defining medically necessary services.

Under these rules,

"Medically necessary service" means a service or item reimbursable under the Montana Medicaid program, as provided in these rules:

(a) Which is reasonably calculated to prevent, diagnose, correct, cure, alleviate, or prevent the worsening of conditions in a patient which:

(i) endanger life;

(ii) cause suffering or pain;

(iii) result in illness or infirmity;

(iv) threaten to cause or aggravate a handicap; or

(v) cause physical deformity or malfunction.

7

(b) A service or item is not medically necessary if there is another service or item for the recipient that is equally safe and effective and substantially less costly including, when appropriate, no treatment at all.

Admin. R. Mont. 37.82.102(18). The Montana Medicaid program provides coverage in 35 service areas, including inpatient and outpatient hospital services, nursing facility services, laboratory and x-ray services, physician services, home health care, ambulance services, and physical and occupational therapy. Admin. R. Mont. 37.85.206(1). Certain services are excluded from coverage under the Montana Medicaid program, including chiropractic services, acupuncture services, naturopathic services, dietician services, physical therapy aide services, surgical technician services, nutritional services, massage services, dietary supplements, infertility treatment, and experimental treatment. Admin. R. Mont. 37.85.207(2). Also excluded from coverage are "all invasive medical procedures undertaken for the purpose of weight reduction such as gastric bypass, gastric banding, or bariatric surgery, including all revisions." Admin. R. Mont. 37.85.207(2)(o).

¶12 Few cases have directly addressed the specific question of whether, within their broad discretion to administer Medicaid programs, states may exclude coverage for gastric bypass procedures. In general, courts have struggled to reconcile the United States Supreme Court's statement that "nothing in the [federal Medicaid] statute suggests that participating States are required to fund every medical procedure that falls within the delineated categories of medical care," with its later observation, in the same case, that "serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage . . . ." *Beal*, 432 U.S. at 441, 444,

8

97 S. Ct. at 2370-71; *see also Harris v. McRae*, 448 U.S. 297, 307 n. 11, 100 S. Ct. 2671, 2683 n.11 (1980).

¶13 Addressing this latter statement, the First Circuit concluded, "[W]e do not believe that we should read this dictum as signaling a flat rule that all services within the five general categories deemed 'medically necessary' by a patient's physician must be provided by the state plan." *Preterm, Inc. v. Dukakis*, 591 F.2d 121, 125 (1st Cir. 1979). The court went on to describe

> two levels of judgment as to medical necessity in the statutory scheme. The first is the macro-decision by the legislature that only certain kinds of medical assistance are deemed sufficiently necessary to come under the coverage of its plan. The second is the micro-decision of the physician, that the condition of his patient warrants the administering of a type of medical assistance which that plan makes available.

*Preterm*, 591 F.2d at 125. This view was also accepted by the Fifth Circuit, which rejected the position that "a state program is required to pay for any services a physician determines to be medically necessary for the patient," and instead held "that a state may adopt a definition of medical necessity that places reasonable limits on a physician's discretion." *Rush v. Parham*, 625 F.2d 1150, 1155 (5th Cir. 1980). Thus, the court concluded that it is not inconsistent with the objectives of Title XIX for a state Medicaid program to categorically exclude certain services. *Rush*, 625 F.2d at 1155-56.

¶14 This view is not universally accepted. The Eighth Circuit has held that "Title XIX mandates that five basic categories of medical assistance be provided to all categorically needy persons when the assistance is medically necessary." *Pinneke v. Preisser*, 623 F.2d 546, 549 (8th Cir. 1980). The court continued, "The decision of whether or not

9

certain treatment or a particular type of surgery is 'medically necessary' rests with the individual recipient's physician and not with clerical personnel or government officials." *Pinneke*, 623 F.2d at 550. Pinneke sought coverage for sex reassignment surgery, which the court found was "the only medical treatment available" to address her transgender status. *Pinneke*, 623 F.2d at 548. Similarly, in *Weaver v. Reagen*, 886 F.2d 194, 196 (8th Cir. 1989), the court found limitations on state Medicaid coverage of the drug AZT unreasonable where the drug was "the only approved treatment of AIDS."

¶15 Despite disagreement among the federal courts regarding whether a state Medicaid program must fund all medically necessary treatments within a mandatory service area, it is clear that exclusions from Medicaid coverage may not discriminate on the basis of "diagnosis, type of illness, or condition." 42 C.F.R. § 440.230. Thus, categorical exclusion of *all* treatments for a certain condition, or of the *only* available treatment for that condition, is arbitrary, unreasonable, and inconsistent with the objectives of Title XIX. *McCoy v. Dept. of Health & Welfare*, 907 P.2d 110, 113-14 (Ida. 1995). In *McCoy*, one of the only cases to address Medicaid coverage for the treatment of obesity, the Supreme Court of Idaho concluded that a state Medicaid rule excluding "all medical procedures for the treatment of obesity" was overly broad and unreasonable. 907 P.2d at 112, 114. The court declined to address, however, whether narrower exclusions of specific procedures, such as gastric stapling or intestinal bypass surgery, were permissible. *McCoy*, 907 P.2d at 114.

¶16 Bailey argues that the Department's exclusion of "all invasive medical procedures undertaken for the purpose of weight reduction," combined with the exclusion of

10

"dietician services," "nutritional services," and "dietary supplements," Admin. R. Mont. 37.85.207(2)(d), (g), (i), (o), has the effect of excluding all treatments for obesity, and thus discriminates on the basis of diagnosis or condition. She further argues that the components of gastric bypass surgery fall within mandatory service areas, such as inpatient hospital services, and therefore must be covered if medically necessary. She claims the Department cannot rely on State budgetary considerations to exclude necessary medical treatment.

¶17 We first address Bailey's claim that rules promulgated by the Department have effectively excluded all possible treatments for obesity, and therefore impermissibly discriminate on the basis of condition or diagnosis. While it may be apparent to a layperson that the excluded categories—surgical procedures, nutritional and dietician services, and dietary supplements—encompass many possible treatments for obesity, this Court may not make a determination on this silent record that these treatments are the *only* possible methods of treating obesity. Bailey has not presented any expert testimony explaining the range of possible treatments for obesity and their feasibility for patients considered morbidly obese. Without such testimony, we are unable to determine whether the exclusions prohibit all treatment for the condition of obesity, and thus unable to determine whether the exclusions discriminate on the basis of that condition.

¶18 In her reply brief on appeal, Bailey refers to a prior hearing decision in which a Department hearing officer stated that "[t]he Montana Medicaid Program does not cover any treatments for morbid obesity, such as gastric bypass surgery, dietician services, nutritional services and dietary supplements." There is no information before us

11

regarding how the hearing officer reached this conclusion and what evidence, if any, this statement was based upon. We are therefore unable to accord this statement any conclusive effect.

¶19 We next address Bailey's argument that the Department may not exclude medically necessary treatments falling within mandatory service areas. As noted, this is an area in which courts are divided, and guidance from the Supreme Court has been less than definitive. We agree with those courts holding that a state may "adopt a definition of medical necessity that places reasonable limits on a physician's discretion," *Rush*, 625 F.2d at 1154, and therefore is not required to provide coverage for every procedure falling within a mandatory service area. We are persuaded, first, by the plain language of the federal Medicaid statute, which provides that each state is to furnish medical assistance "as far as practicable under the conditions in such State . . . ." 42 U.S.C. § 1396-1. This speaks to the states' "broad discretion" in determining the scope of coverage under the program. *Beal*, 432 U.S. at 444, 97 S. Ct. at 2370. In exercising this broad discretion, the State is permitted to consider the "macro-decision" of what types of medical assistance it considers sufficiently necessary to include within the program; within these reasonable limits, physicians may then exercise their discretion as to the "micro-decision" regarding the appropriate treatment for an individual patient. *Preterm*, 591 F.2d at 125.

¶20 If we were to conclude otherwise, the State's "broad discretion," *Beal*, 432 U.S. at 444, 97 S. Ct. at 2371, would be negated, "the variations [of medically necessary services] being theoretically limited only by the diversity of physicians . . . ." *Preterm*,

12

591 F.2d at 125. Although we acknowledge the Supreme Court's statement that "serious statutory questions might be presented if a state Medicaid plan excluded necessary medical treatment from its coverage," *Beal*, 432 U.S. at 444, 97 S. Ct. at 2369-70, we do not believe such conditional speculation can be allowed to override clear statutory language allowing states to consider "the conditions in such State" and provide assistance "as far as practicable" under those individualized conditions, 42 U.S.C. § 1396-1.

¶21 The Department has exercised the discretion granted to states by the federal Medicaid statute by defining the term "[m]edically necessary service" within the Montana Medicaid program. Admin. R. Mont. 37.82.102(18). We recognize that this definition itself presents certain difficulties to claimants. A "[m]edically necessary service" is one "reimbursable under the Montana Medicaid program." Admin. R. Mont. 37.82.102(18). Thus, even if a procedure meets the remaining elements of medical necessity because it is reasonably calculated to correct conditions that endanger life, cause pain, result in illness or infirmity, threaten to cause a handicap, or cause physical deformity, it is, by definition, not medically necessary if the Department has decided not to cover it. Admin. R. Mont. 37.82.102(18). The Department's definition codifies its "macro-decision" making authority, *Preterm*, 591 F.2d at 125, and yet, the broad and circuitous nature of the definition causes us concern. Bailey is unable to demonstrate that the treatment she seeks is medically necessary under this definition, and this Court must struggle with the issue of whether the State may exclude a medically necessary service without the benefit of any evidence demonstrating whether the service in question is, in

fact, medically necessary. Bailey has not, however, challenged the reasonableness of this definition.

¶22    The record before us is slim. We have not been presented with evidence demonstrating that the procedure sought by Bailey would, but for the categorical exclusion, meet the Department's definition of medical necessity. Without this information, we cannot determine whether denial of the procedure in Bailey's case is unreasonable. Remanding to obtain a further determination of medical necessity, however, would require us to invalidate the Department's decision to exclude gastric bypass surgery from coverage. We are not able to declare the exclusion unreasonable when we have been presented with no evidence regarding the safety, success, cost-efficiency, or other aspects of surgical procedures for weight reduction. Without this information, we cannot evaluate the reasonableness of the Department's judgment that these services are not appropriate for Montana Medicaid coverage.

¶23    Finally, we address Bailey's argument that monetary considerations are not a sufficient basis for the Department's decision to exclude "invasive medical procedures undertaken for the purpose of weight reduction" from Montana Medicaid coverage. Admin. R. Mont. 37.85.207(2)(o). Having elected to participate in the Medicaid program, Montana is required to comply with the objectives of Title XIX. *Wilder*, 496 U.S. at 502, 110 S. Ct. at 2513. Within that broad requirement, however, a state may "place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230. Montana law explicitly recognizes the need to address the State's fiscal realities, providing specific funding principles and

14

permitting the Department to "set priorities to limit, reduce, or otherwise curtail the amount, scope, or duration of the medical services made available" in accordance with those principles. Section 53-6-101(12), MCA. It is implausible that the mandate to furnish medical assistance "as far as practicable under the conditions in such State" does not permit consideration, within the basic requirements of Title XIX, of such practical conditions as the State's financial resources. 42 U.S.C. § 1396-1.

**CONCLUSION**

¶24 The federal Medicaid statute does not require a state Medicaid program to fund every treatment within the required categories of service. Bailey has not shown that the exclusion of "all invasive medical procedures undertaken for the purpose of weight reduction" discriminates against persons with a diagnosis of morbid obesity by precluding all possible treatments for that condition. The State's consideration of funding priorities and principles provided a valid basis for the exclusion. The Department's rule excluding coverage for gastric bypass surgery is not invalid, and the Order of the District Court is therefore affirmed. Though we affirm today, we make no decision regarding those matters on which we were presented with an insufficient record, and thus do not foreclose Bailey from obtaining a more conclusive determination of those issues in further proceedings if her condition warrants.


/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA

15

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT