GtBorge Beisheim, Jr., J.
The petitioner has brought this article 78 proceeding for a judgment reversing and annulling the determinations of the respondents, Abe Lavine as Commissioner of the New York State Department of Social Services, and Leonard Berman as Commissioner of the Westchester County Department of Social Services, denying medical assisance claimed by petitioner pursuant to section 363 et seq. of the Social Services Law, on the grounds that such determinations were arbitrary, capricious, made in violation of law and made in violation of lawful procedure.
Petitioner also seeks a declaratory judgment under CPLR 3001 that respondents’ denial of medical assistance to needy applicants on grounds of alleged nonresidence, citizenship, or visa status was in violation of law and that respondents’ failure to approve, promulgate and publish the policy complained of herein was in violation of Part 300 of the Regulations of the State Department of Social Services (18 NYCRR Part 300) and section 363 and subdivision 1 of section 365 of the Social Services Law.
On the return day of the motion, a motion was made by Legal Services for the Elderly Poor for leave to file a brief amicus curiae, which motion the court grants and has considered said brief in connection with the disposition of petitioner’s application.
Petitioner is a nonresident alien, having entered the United States from the Bahamas, holding a passport issued by the *396 Bahamian Government containing a visa granted by the American Embassy for entry into this country as a tourist. Thereafter, in violation of a condition for entry as a tourist, she obtained employment as a domestic, and her passport expired in February, 1973 at which time her application for an “ Alien Employment Certification ” was not finalized. She became ill in May, 1973 and was hospitalized in the New Rochelle Hospital in Westchester County and the Westchester County Department of Social Services denied her application for medical assistance; which determination after a “fair hearing” was confirmed by the New York State Department of Social Services.
Petitioner claims that even if she be deemed to be á noncitizen, nonresident alien illegally in the country, that she is entitled to medical assistance from the Westchester County Department of Social Services under the New York State law as it existed prior to June 14, 1974. Petitioner relies upon sections 363 and 365 of the Social Services Law (formerly Social Welfare Law). Section 363 in part reads as follows: ‘ ‘ Medical assistance for needy persons is hereby declared to be a matter of public concern and a necessity in promoting the public health and welfare and for promoting the state’s goal of making available to everyone, regardless of race, age, national origin or economic standing, uniform, high-quality medical care.”
The pertinent part of section 365 relied upon by petitioner reads as follows: “ (a) each public welfare district shall furinsh medical assistance to the persons eligible therefor who reside in its territory * * * (b) each public welfare district shall also be responsible for furnishing medical assistance to eligible persons found in its territory, who are temporarily in the state ”.
Respondents maintain that a noncitizen, nonresident alien who is illegally in this country is ineligible for medical assistance. They claim that section 363 et seq. of the Social Services Law, effective April 30, 1966 was enacted with the intent to take advantage of the then recently enacted title XIX of the Federal Social Security Act (U. S. Code, tit. 42, § 1396 et seq.), which was a joint Federal-State program providing for substantial Federal financial aid to be administered by the .State participating in such compact. They argue that a State desiring to participate in the Federal program is mandated to .submit a total plan of medical assistance required by the Federal Department of Health, Education and Welfare for approval and further to administer the State medical program in a manner not inconsistent with title 19 and the rules promulgated by the Secretary of Health, Education and Welfare. They contend that section
*397 363 et seq. of the Social Services Law is the State statutory counterpart conforming with the Federal act which obligated the New York State Department of Social Services to comply with all of the requirements of the Federal act and the rules promulgated thereunder.
In further support of their position that petitioner is ineligible for medical assistance, respondents rely upon sections 248.40 and 248.50 of title 45 of the Code of Federal Regulations. These sections read as follows:
“ § 248.40 Residence * * * (b) Condition for plan approval. A State plan under title XIX of the Act may not impose any resident requirement which excludes any individual who is a resident of the State. For purposes of this section: (1) A resident of a State is one who is living in the State voluntarily with the intention of making his home there and not for a temporary purpose * * * Residence may not depend upon the reason for which the individual entered the State, except insofar as it may bear upon whether he is there voluntarily or for a ‘ temporary purpose
“ § 248.50 Citizenship and alienage. Conditions for plan approved. A State plan under title XTX of the Social Security act shall include an otherwise eligible individual who is a resident of the United States but only if he is either (a) a citizen or' (b) an alien lawfully admitted for permanent residence or otherwise permanently residing ip. the United States under Color of law (including any alien who is lawfully present in the United States as a result of the application of the provisions of section 203(a)(7) or section 212(d)(5) of the Immigration and Nationality Act). ”
Section 248.50 aforesaid would not seem to sustain respondents’ position, by reason of the fact that said regulation was not adopted by the Department of Health, Education and Welfare until November 2, 1973.
Both petitioner and respondents rely upon the decision of the United States Supreme Court in Graham, v. Richardson (403 U. S. 365) and its companion case, Sailer v. Leger (403 U. S. 365) which, as this court reads those decisions, are not decisive of the question at bar one way or the other. In the Graham case, the Supreme Court decided that the Fourteenth Amendment to the United States Constitution prohibits any discrimination between citizens and aliens. In the Graham case, the Supreme Court declared unconstitutional a statute of the State of Arizona providing that no person should be entitled to general assistance who did not meet the requirement (p. 367) “ is a citizen of the *398 United States, or has resided in the United States a total of fifteen years
In the Sailer case, the court ruled upon a Pennsylvania statute concerning that portion of a general assistance program that was not federally supported. The statute provided that those eligible for assistance shall be (p. 368) “ (1) needy persons who qualify under the federally supported categorical assistance programs and (2) those other needy persons who are citizens of the United States ”. Assistance to the latter group under the Pennsylvania statute was funded wholly by that Commonwealth. Mr. Justice Blackmun, in declaring both the Arizona and Pennsylvania statutes in violation of the Fourteenth Amendment, stated as follows (pp. 374, 375): “ Whatever may be the contemporary vitality of the special public-interest doctrine in other contexts after Takahashi, we conclude that a State’s desire to preserve limited welfare benefits for its own citizens is inadequate to justify Pennsylvania’s making noncitizens ineligible for public assistance, and Arizona’s restricting benefits to citizens and longtime resident aliens. First, the special public interest doctrine was heavily grounded on the notion that ‘ [wjhatever is" a privilege, rather than a right, may be made dependent upon citizenship. ’ People v. Crane, 214 N. Y., at 164,108 N. E., at 430. But this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a ‘ right ’ or as a ‘ privilege. ’ Sherbert v. Verner, 374 U. S. 398, 404 (1963); Shapiro v. Thompson, 394 U. S., at 627 n. 6; Goldberg v. Kelly, 297 U. S. 254, 262 (1970); Bell v. Burson, 402 U. S. 535, 539 (1971). Second, as the Court recognized in Shapiro: 1 [A]' State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. * * * The saving of welfare costs cannot justify an otherwise invidious classification. ’ 394 U. S., at 633. Since an alien, as well as a citizen is a ‘ person ’ for equal protection purposes, a concern for fiscal integrity is no more compelling a justification for the questioned classification in these cases than it was in Shapiro
This court does not believe, however, that the Supreme Court of the United States as yet has decided that transient, illegal aliens have the protection of the Fourteenth Amendment. Accordingly, if only the Federal law and the Federal regula *399 tions were applicable, this court would decide in favor of the respondents.
The Legislature of the State of New York, by chapter 811 of the Laws of 1974, which was signed by the Governor and became effective on June 7, 1974 amended the Social Services Law (by adding § 131-k) to provide that “ an alien who is unlawfully residing in the United States or who fails to furnish evidence that he is lawfully residing in the United States shall not be eligible for aid to dependent children, home relief or medical assistance except for a temporary period of thirty days This June 7, 1974 amendment, in this court’s opinion, changes the New York law in respect to those persons who are eligible for medical assistance in the State of New York.
Section 365 (subd. 1, par. [b]) of the Social Welfare Law, which was in effect at the time petitioner requested medical assistance, provided that 1 ‘ each public welfare district shall also be responsible for furnishing medical assistance to eligible persons found in its territory, who are temporarily in the state ” [emphasis added]. Petitioner, at the time she became ill, was admittedly a needy person and was found in Westchester County. The Legislature in 1974 apparently decided that it was too generous to nonresident aliens and restricted aid to them for a 30-day period, deeming such time sufficient for the Department of Immigration to be able to deport them if they were illegally in the country. As this court reads the statutes prior to the June 7,1974 amendment, the New York law, in effect, made the State of New York an international relief agency for any needy persons found in the State, requiring medical attention. Accordingly, this court believes that the determinations of the respondents were in contravention of the New York statutes in effect in May, 1973.
The court disagrees, however, with petitioner’s second contention that the Westchester County Department of Social Services had adopted a policy that was not published and promulgated in accordance with lawful procedure. No policy whatsoever was adopted, as the court views it; instead, Commissioner Berman, upon advice of the County Attorney, interpreted the law as denying nonresident, illegal aliens medical assistance, which interpretation is one with which this court disagrees.. However, the court finds no policy established by Commissioner Berman which required publication or promulgation.
The court also denies petitioner’s contention that denial of Medicaid to her on grounds of her alleged visa status was unconstitutional. This court does not read the Fourteenth Amend *400 ment or the cases cited thereunder as constitutionally requiring, a State to furnish medical assistance to every alien temporarily or illegally found within its territory. The New York Legislature, in this court’s opinion, did mandate such medical assistance prior to amending the Social Services Law on June 7,19.74 which is the basis for this court’s decision, but the Legislature was not constitutionally required to do so.
In conclusion, the court is of the opinion that the State of New; York may not be eligible to receive back from the Federal Government a proportionate share of the medical expenses of petitioner which has been granted to her in contravention of Federal regulations. There is no legal prohibition, however, preventing the Legislature of New York, wisely or unwisely, from awarding relief on its own, independent of Federal reimbursement.
This court, therefore, grants judgment in favor of petitioner and against respondents, annulling and reversing in all respects their denial of medical assistance benefits to petitioner, on the ground that such determinations were in violation of the statutes of the State of New York. The. court denies, however, petitioner’s request for a declaratory judgment and all other relief sought in the petition.