# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2791

_____

| | | |
|---|---|---|
| Kelly Bowlin, on behalf of herself and all others similarly situated, | * * * | |
| Appellee, | * | |
| | * | Appeal From the United States |
| v. | * | District Court for the |
| | * | District of Nebraska. |
| Nancy Montanez, as the Director of the Nebraska Department of Health and Human Services, | * * * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 15, 2006
Filed: May 4, 2006

_____

Before RILEY, HEANEY, and MELLOY, Circuit Judges.

_____

HEANEY, Circuit Judge.

This case involves a certified class of over 764 single, working mothers and other caretaker relatives in Nebraska who lost their Medicaid benefits due to their increased income from employment. The class contends that they are eligible for temporary medical assistance (TMA) benefits described in 42 U.S.C. § 1396r-6, which provides up to one year of transitional medical coverage to certain categories of people who have lost Medicaid because of an increase in the amount of their earned

income.  The district court[1] granted the class's motion for summary judgment in all respects and directed the Director of the Nebraska Department of Health and Human Services to provide TMA to the class members, pursuant to § 1396r-6.  The Director appeals, arguing that the district court erred in concluding that the class members were entitled to TMA benefits, and in granting the plaintiffs' motions for summary judgment.  We affirm.

TMA is "a federally funded state program of medical care for the needy and others."  Kai v. Ross, 336 F.3d 650, 651 (8th Cir. 2003).  Title XIX of the Social Security Act grants federal medical assistance to participating states through its Medicaid program.  Id.  Although a state's participation in the Medicaid program is optional, participating states in compliance with the applicable federal rules and regulations are given matching funds by the federal government.  Id.  The federally funded public-assistance program, Aid to Families with Dependent Children (AFDC), operated in conjunction with Medicaid to provide assistance to the needy and others under 42 U.S.C. §§ 1396-1396v.  Under the federal statutes, a person receiving AFDC was also automatically eligible for Medicaid.

In 1996, the Welfare Reform Bill, under the enactment of the Personal Responsibility and Work Opportunity Reconciliation Act (PWORA), replaced AFDC with Temporary Assistance to Needy Families (TANF).  Under PWORA, recipients of TANF were no longer automatically eligible for Medicare benefits.  When the AFDC program was terminated, the legislature enacted 42 U.S.C. § 1396u-1 to extend TMA to individuals who had received AFDC and others who were similarly situated, pursuant to 42 U.S.C. § 1396r-6.

---

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

In Nebraska, a Medicaid recipient's countable income, and thus, eligibility for benefits, is determined by using one of several income methodologies. Section 1396u-1 requires that the income methodology used under the state's AFDC program be used to determine a recipient's countable income, unless the state has chosen to use a less restrictive income methodology. § 1396u-1(b)(2)(C). The Director concedes that Nebraska has used a less restrictive income methodology for the medically needy category than was used for Nebraska's AFDC program in 1996. According to the income methodology used for persons considered medically needy, Kelly Bowlin's income fell below the AFDC income standard in place on July 16, 1996. Her monthly countable income under the state medically needy plan was determined to be $270.55, which was less than the $492.00 limit. In September of 2003, Bowlin received a $0.50 per hour raise from her employer. That December her countable income was determined to be $569.22, or $77.22 over the medically needy income limit. As a result, the Department of Health and Human Services determined that Bowlin was ineligible for Medicaid coverage on January 1, 2005, and she was denied TMA.

Bowlin asserts that she is entitled to TMA. In response to the Director's termination of her medical benefits, Bowlin filed a complaint on behalf of herself and a class of needy Nebraska caretaker relatives who were certified as follows:

> All caretaker relatives in Nebraska with earned income: a) who have received Medicaid under the medically needy category without a spend down for at least three of the six months prior to having their Medicaid benefits terminated due to their earned income; b) who, but for their earned income would continue to receive Medicaid under the medically needy category without a spend down; and c) who have not been or will not be afforded the transitional Medicaid benefits provided for in 42 U.S.C. § 1396r-6.

(J.A. at 241.)

-3-

The Director does not dispute that the plaintiffs are caretaker relatives who received Medicaid in at least three of the last six months immediately preceding aid ineligibility, and whose benefits were terminated because of hours of or income from employment. Bowlin argues on behalf of the class that as a medically needy person she is covered by the language of 42 U.S.C. § 1396u-1, and is entitled to receive TMA pursuant to 42 U.S.C. § 1396r-6. The Department of Health and Human Services argues in response that only those persons who received AFDC are entitled to TMA benefits.

"We review the grant of summary judgment de novo, applying the same standard as the district court." Ahlborn v. Arkansas Dep't of Human Servs., 397 F.3d 620, 622 (8th Cir. 2005). "We will affirm the grant of summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.

An individual is eligible for TMA if she or he:

> was receiving aid pursuant to a plan of the State approved under part A of subchapter IV of this chapter in at least 3 of the 6 months immediately preceding the month in which such family becomes ineligible for such aid, because of hours of, or income from, employment of the caretaker relative (as defined in subsection (e) of this section) or because of section 602(a)(8)(B)(ii)(II) of this title (providing for a time-limited earned income disregard), shall, subject to paragraph (3) and without any reapplication for benefits under the plan, remain eligible for assistance under the plan approved under this subchapter during the immediately succeeding 6-month period in accordance with this subsection.

42 U.S.C. § 1396r-6(a)(1). This section is applicable to Bowlin if § 1396u-1 applies to the medically needy who received Medicaid benefits. See Kai, 336 F.3d at 653 ("[B]y virtue of Section 1925, 42 U.S.C. § 1396r-6, persons who were part of the

group covered by [§ 1396u-1] are entitled to Temporary Medical Assistance if their eligibility is lost by reason of a state's amending its laws."). Section 1396u-1 reads in relevant part:

> (a) References to subchapter IV-A are references to pre-welfare-reform provisions
>
> Subject to the succeeding provisions of this section, with respect to a State any reference in this subchapter (or any other provision of law in relation to the operation of this subchapter) to a provision of part A of subchapter IV of this chapter, or a State plan under such part (or a provision of such a plan), including income and resource standards and income and resource methodologies under such part or plan, shall be considered a reference to such a provision or plan as in effect as of July 16, 1996, with respect to the State.
>
> (b) Application of pre-welfare reform eligibility criteria
>
> > (1) In general
> >
> > For purposes of this subchapter, subject to paragraphs (2) and (3), in determining eligibility for medical assistance –
> >
> > > (A) an individual **shall be treated as receiving** aid or assistance under a State plan approved under part A of subchapter IV of this chapter only if the individual meets –
> > >
> > > > (i) the income and resource standards for determining eligibility under such plan, . . .as in effect as of July 16, 1996 . . . .
> >
> > (2) State option
> >
> > For the purposes of applying this section, a State –

(A) may lower its income standards applicable with respect to part A of subchapter IV of this chapter, but not below the income standards applicable under its State plan under such part on May 1, 1988;

(B) may increase income or resource standards under the State plan referred to in paragraph (1) over a period (beginning after July 16, 1996) by a percentage that does not exceed the percentage increase in the Consumer Price Index for all urban consumers (all items; United States city average) over such period; and

(C) may use income and resource methodologies that are less restrictive than the methodologies used under the State plan under such part as of July 16, 1996.

(Emphasis added).

In Kai, this court considered the plain meaning of § 1396u-1 and explained that:

the effect of [§ 1396u-1] is clearly to make eligible for medical assistance not only persons who were receiving AFDC . . . but also certain other persons. . . . [T]he provision is expressly made "subject to paragraphs (2) and (3)." The phrase "subject to" must mean that, in the event of any conflict between (2) or (3) and (1), the former two paragraphs will prevail, or, in the present context, that (2) and (3) add persons to the group that is already eligible under (1) by virtue of being AFDC recipients. It appears to us that plaintiffs are members of a group that was added in this way.

336 F.3d at 654. The plaintiffs in that case were beneficiaries of an income methodology that was less restrictive than Nebraska's AFDC methodologies. The court held that when the less restrictive methodology was removed by statute, the state was required to extend TMA benefits to them, pursuant to § 1396r-6. Id. Similarly,

in analyzing § 1396u-1(b)(1), the district court concluded that Bowlin is equally entitled to TMA:

> The final sub-category under the State option plan, (C), addresses income and resource methodologies. Unlike the two previous categories, the language of this last section *does not limit itself only to an AFDC or AFDC replacement program.* Instead, the plain language illustrates that a State may use less restrictive methodologies than those used "under the State plan under such part [AFDC] as of July 16, 1996."

Bowlin v. Montanez, No. 4:04CV3218, slip op. at 9-10 (D. Neb. Apr. 5, 2005) (quoting § 1396u-1(b)(1)(c)). We hold that under the plain meaning of the statute, Bowlin and the class members are persons that Congress intended to be treated as having received AFDC benefits under § 1396u-1, and that they are entitled to TMA benefits. We therefore affirm the district court.

_____